408 P.2d 806

Yvonne WISE (Gillette), Plaintiff-Appellant,

v.

Kenneth GILLETTE, Defendant-Respondent.

No. 9632.

Supreme Court of Idaho.

Dec. 15, 1965.

Robert M. Robson, Kellogg, for respondent.

C. J. Hamilton, Coeur d'Alene, for appellant.

KNUDSON, Justice.

Appellant, Yvonne (Gillette) Wise is the mother of Cherie Rae Gillette (hereinafter referred to as Cherie) who was born in 1956. As the result of a tumor in appellant's neck she became paralyzed in her legs and since Cherie's birth has continually been unable to walk and has needed a wheelchair to move about. Shortly after Cherie's birth her father, defendant-respondent herein, was incarcerated in the Idaho State Penitentiary following his conviction of assault with intent to commit robbery. He remained there, except for a four-month transfer to the mental hospital at Blackfoot, Idaho until his release on May 12, 1964.

When Cherie was four months of age she was taken to the home of her grandmother, Hazel Gillette, where she remained for the period of three years and four months. On November 19, 1959, appellant obtained a decree of divorce wherein it was decreed that the care, custody and control of Cherie (then upwards of three years of age) be awarded to Mr. and Mrs. Ray Miller, with whom she has continued to live. Mrs. Ray Miller is appellant's aunt.

Upon application of appellant and under date of July 24, 1964, the trial court issued an order requiring the defendant-respondent, inter alia, to show cause before the court as to why the divorce decree should not be modified by awarding the care, custody and control of Cherie to appellant and terminate the award of custody to Mr. and Mrs. Ray Miller. Following the hearing had pursuant to said order the court decreed, under date of September 17, 1964, that Cherie remain in the care, custody and control of Mr. and Mrs. Miller until further order of the court, with the privilege on the part of appellant of having the child's temporary custody during one-half of the school Christmas vacation period and for a six-weeks period during school summer vacation; that appellant provide the child's transportation to her home and that Millers provide the child's return transportation. This appeal is from the custody order entered September 17, 1964.

Appellant contends that the court erred in admitting evidence as to the home life and earnings of the Miller family, also as concerns the care which is given and the things they furnish to Cherie. This court has recognized that the determination of custody of children is of such a serious nature, that the court shall never act upon less than all, and the best, evidence available, having any bearing on the question of welfare. Brashear v. Brashear, 71 Idaho 158, 228 P.2d 243. The evidence in the instant case disclosed that the Millers' home had been Cherie's home for the past five years and the principal issue before the court was whether it was to continue to be her home. This court has stated that in determining the best interests of the child the court should also take into consideration the

child's prior custody; that it is far better for a child of innocent years to live among the people and with the attachments formed in childhood than to be torn away from familiar scenes, friendly faces and kindly voices, and cast into a strange environment. Application of Altmiller, 76 Idaho 521, 285 P.2d 1064. It was entirely proper and necessary that the court be informed regarding the conditions surrounding the child in the Miller home.

Under the remaining two assignments of error it is claimed that the court erred in failing to find in favor of appellant. In the brief argument presented in support of this contention it is stated that appellant has visited her child as frequently as possible but was thwarted by Mrs. Miller's hostility toward her. In this regard the court did find that visitations between appellant and her daughter had been unduly brief because of two factors: (1) lack of cooperation between appellant and Millers; (2) by reason of the fact that Millers live in Idaho and appellant lives in California.

The court found that Cherie had been adequately and properly cared for and is well adjusted to life in her present home and school surroundings under the care and custody of Mr. and Mrs. Miller; that appellant and also Millers, are morally fit and proper persons to have the care, custody and control of a minor child and that it was in the best interests of Cherie that she remain in the custody of Millers with the right of temporary custody in appellant to the extent hereinbefore stated.

Mention is also made in appellant's argument that at the time of obtaining the divorce she did not have funds with which to maintain Cherie and that she initiated this proceeding as soon as she was financially able to do so. The trial court did not comment or make any finding regarding appellant's inability throughout the preceding years to maintain her daughter who at the time of this hearing (9-16-64) was eight years of age.

It is not difficult to conceive of circumstances wholly beyond the control of a parent having the deepest affection for a child which would render it impossible for her to support her child. Manifestly it is not sufficient to justify depriving a parent of custody merely to prove the poverty of a parent and that financial benefits will come to the child from separation. In order to entitle the financial status of a parent to be of particular significance in like cases, the condition in life and the character and habits of the parent must be shown to be such that provision for the child's ordinary comfort and contentment, or for its intellectual and moral development cannot be reasonably expected at his hands. In re Crocheron's Estate, 16 Idaho 441, 101 P. 741, 33 L.R.A.,N.S., 868; Application of Altmiller, 76 Idaho 521, 285 P.2d 1064.

The right of a parent to the care, custody and control of his or her child is not only a natural right but a legal one. Before a court is justified in separating a child from its parent, it must be shown by convincing evidence that the parent is an unfit person to have the custody of the child, or there must be finding of special facts and circumstances constituting an extraordinary reason for taking the child from the parent. No inflexible rule can be laid down by which unfitness or other reason may be determined. Each case must be decided on its own peculiar facts.

The trial court found that Cherie and her mother are not well acquainted and that Cherie views her mother as a near stranger. This is an undesirable consequence because it is the policy of the law to preserve the ties of relationship between a child and its parents. In this regard it is commendable that the trial court proceeded in its judgment to grant temporary custody in the mother for stated periods in the hope that the ties of relationship between them would be preserved and encouraged rather than severed or weakened. The custody order in this case was rendered more than a year ago and if this cause could be reconsidered soon by the trial court it would have opportunity to learn what has resulted from the two periods which have now elapsed since entry of the order appealed from, during which appellant has had opportunity to have Cherie with her.

This court has held consistently that in a divorce action custody of the children should be awarded to one or both of the parents, unless it be affirmatively shown that both parents are unfit or that they are unable properly to maintain them and provide for their proper training and support. The welfare of the child is of paramount importance, but it is not the only matter to be considered in determining to whom the custody of the child should be given. It is only where the legal right of the parent to the custody of the child is not clear that the child can be committed to the custody of another on the ground that it will be better cared for by such other person. Jain v. Priest, 30 Idaho 273, 164 P. 364.

In Piatt v. Piatt, 32 Idaho 407, 184 P. 470, which was an action for divorce, the trial court awarded the custody of a minor child to the grandfather, having found that he was a fit and proper person and that such an award would be for the best interests of the children. Reversing the judgment the court said:

"In our opinion, this finding of the court is not sufficient to justify a decree awarding the custody of the children to their grandfather. In addition to this finding, the court must, before making such an order, also find as a fact, based upon sufficient evidence, that the parents are unfit persons to have the custody and control of the children, or on account of the circum-

stances surrounding them they are unable to give proper care, nurture, and training to the minor children."

Although this record does not disclose what all of the circumstances were when the decree of divorce was granted or just why the child's custody was at that time awarded to Millers, it does reveal that appellant was in ill health and was physically and financially unable to provide the care her child required. There is no intimation in the decree of divorce that appellant was considered to be morally unfit.

Appellant's petition for modification of the decree is not contained in this record. However, it appears that she relies upon changed conditions as grounds for modification. The record discloses that since the divorce appellant has remarried and that her husband has joined in the request for custody of Cherie. Although considerable evidence was introduced regarding appellant's physical and financial condition, the court did not make any finding as to what, if any, changes had occurred in either condition.

The court found the mother, appellant, to be morally fit and proper to have the care, custody and control of her child. However, the court also found and concluded that it was in the best interests of Cherie to remain in the custody of Millers. There is no other finding on which the decree awarding custody of the child to Millers is based. Under the circumstances the writer of this opinion does not consider this finding to be sufficient to award the custody of this child to persons other than her mother.

By so concluding I do not infer that the record does not contain evidence of other factors which may justify and sustain the conclusion reached by the trial court. However the court did not make findings regarding such other factors. If appellant is a fit and proper person to have the custody of her child, it should be pointed out why or what circumstances exist that justify the conclusion of awarding the child's custody to others. In connection with appellant's physical and financial condition we observe that it is stated in appellant's brief that "appellant's physical condition is approximately the same as it was when Cherie was born." Also at the hearing, when appellant's husband was asked if appellant was capable of taking care of a child physically, he answered "no." The record also discloses that by reason of her physical condition it is necessary for appellant to presently have someone help her and for this purpose, when possible, a housekeeper, who is paid by the state, is employed to assist her.

In view of the evidence introduced and the lack of findings as hereinbefore indicated, I am of the opinion that the order awarding custody should be vacated and the

cause remanded to the trial court for further proceedings.

McFADDEN, J., concurs.

TAYLOR, Justice, with whom McQUADE, C. J., and SMITH, J., concur (dissenting).

I concur in the opinion of Justice Knudson except as to the conclusion reached and the reasons therefor.

In my opinion the most important factors involved in the determination of the future custody of Cherie are the age and background of the child. She was eight years old at the time of the hearing in the district court and is now past nine years of age. During the past six years she has been reared and cared for by Mr. and Mrs. Miller with whom the court found she has had a good home with adequate and proper schooling, care and surroundings, and where she has become well adjusted. The mother has not had the company or care of the child since she was four months old. The mother is a stranger to the child. While this separation of mother and child and the formation of ties of affection for those who have cared for her during the early years of her life was not the result of any fault of the plaintiff, it is a fact which fate ordained for the individuals involved. There is nothing which a court can decree which will change the past. To take the child out of her present environment and destroy the attachments made and her accustomed mode of life after so many years, and place the child in unfamiliar surroundings with unfamiliar people is not in the best interests of the child, and may result in irreparable harm to her.

■ The evidence in the record is amply sufficient to sustain the order of the trial court.

■ What is said in Justice Knudson's opinion regarding the natural and legal custodial right of a parent has particular force and application to decrees awarding custody of children in divorce actions. This is shown by the cited case, Piatt v. Piatt, 32 Idaho 407, 184 P. 470 (1919). In Jain v. Priest, 30 Idaho 273, 164 P. 364 (1917), the children had been taken from the custody of their parents on the ground of their unfitness and later restored to their custody in a habeas corpus proceeding upon a showing of their reformation.

In this case we are not presently concerned with the original award of custody. As shown by the record, that decision was made by the divorce decree in 1956. In the present proceeding the court was requested to modify the custody provisions of the divorce decree by transfer of the custody, from those who had exercised it under the decree during the intervening years, to a parent who has had very little contact with the child from the time she was four months old. This situation presents a problem quite different from that which ordinarily

faces a divorce court in the first instance. Cf. Peterson v. Peterson, 77 Idaho 89, 288 P.2d 645 (1955); Jeppson v. Jeppson, 75 Idaho 219, 270 P.2d 437 (1954).

The trial court's findings of fact are general, and somewhat deficient in detail, as pointed out by Justice Knudson; but when considered under the rule applied in Cazier v. Economy Cash Stores, 71 Idaho 178, 228 P.2d 436 (1951), are sufficient to support the order entered. See also: Angleton v. Angleton, 84 Idaho 184, 370 P.2d 788 (1962); Whittaker v. Kauer, 78 Idaho 94, 298 P.2d 745 (1956).

The order is affirmed.

No costs allowed.